IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DANNY BARLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-15-66-D |
| v. | ) | |
| | ) | |
| ROBERT PATTON, Director, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983. In his Complaint filed January 21, 2015, Plaintiff alleges that he has been denied due process and that his constitutional ex post facto and double jeopardy guarantees have been violated because of Defendants' use of "escape history" points to increase his custody classification to maximum security and to limit his ability to earn sentence credits or higher wages. Plaintiff seeks a declaratory judgment and compensatory damages as well as injunctive relief in the form of restoration of "lost" credits and wages.

Defendants Patton, Ellis, and "Internal Affairs" have moved to dismiss the action or, alternatively, for summary judgment. Defendants have also caused the filing of a special report illuminating the factual background of Plaintiff's claims. Plaintiff has responded to Defendants' motions. The matter has been referred to the undersigned Magistrate Judge for

1

initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Court dismiss the action.

I. Background

Plaintiff has been in continuous custody of the Oklahoma Department of Corrections ("ODOC") since May 19, 1982, when he began serving a 70-year term of imprisonment for a first degree manslaughter conviction. On July 24, 2008, Plaintiff was paroled from the manslaughter sentence and rebilled to a 20-year sentence for a kidnapping conviction entered in Cleveland County, Oklahoma, in Case No. CF-1980-282. Plaintiff has a consecutive 20-year sentence to serve for an armed robbery conviction entered in Cleveland County, Oklahoma, in Case No. CF-1980-283.

In 1985, Plaintiff escaped from the Conner Correctional Center. He was apprehended approximately one week later and returned to ODOC custody. Plaintiff was transported to a maximum security facility after his arrest. Special Report, Exs. 7, 8. In 1991, Plaintiff was found guilty in a disciplinary proceeding of the misconduct offense of attempted escape. Id., Exs. 7, 9.

In a disciplinary hearing conducted at Oklahoma State Reformatory ("OSR") on January 25, 2013, Plaintiff was found guilty of the misconduct offense of battery, and punishment imposed for the misconduct included the loss of earned credits. Id., Ex. 10. Plaintiff appealed the misconduct conviction, and a rehearing and re-investigation of the battery charge was ordered due to the finding that Plaintiff's due process rights had been denied in the disciplinary hearing. Plaintiff's Response (Doc. # 29), Ex. 3. In a second

disciplinary proceeding concerning the misconduct charge conducted at DCF on July 31, 2013, Plaintiff was found not guilty due to the inability of the investigator to obtain video evidence from OSR. Plaintiff's Response (Doc. # 29), Ex. 3.

In a custody assessment conducted by his unit classification committee ("UCC") in February 2013, Plaintiff was recommended for transfer to a maximum security facility because he had 22 or more security points, including 10 points for his 1985 escape and additional points for his misconduct record and the severity of his conviction. Id., Ex. 11. Plaintiff was transferred to a maximum security unit at Davis Correctional Facility ("DCF") in March 2013.

In February 2015, Plaintiff was recommended for transfer to a medium security facility. Id., Exs. 14, 15. Plaintiff's UCC completed a custody assessment form reflecting that Plaintiff has 10 security points for his escape history in 1991. Id. In the comments section of the form, Plaintiff's UCC noted that he has security points for a maximum security facility because of his 1991 escape, but he has been "misconduct free since 2011" and he was transferred to Davis Correctional Facility's maximum security unit "without ever receiving a misconduct." Id.. The February 2015 transfer recommendation was approved. Id., Ex. 15. Plaintiff recently filed a notice of change of address reflecting that he is now in custody at the Lawton Correctional Facility, a medium security facility. (Doc. # 30).

II. Claims

In his Complaint, Plaintiff alleges that he

> was placed in maximum security 3-4-2013 based solely on the

3

> amount of security points he has and not because of any rule violation, and is being subjected to a 2003 policy that is not retroactive but has given plaintiff security points over alleged 1985 and 1991 incidents. Application of a 2003 policy to any event before that date that deprives plaintiff of earned time credits would increase his punishment [and] is also a violation of the Ex Post Facto Clause of the U.S. Const. Plaintiff has no misconduct or felony conviction for a 1985 escape. In addition to this plaintiff has already been subjected to maximum security in both instances (1985 and 1991) thereby subjecting plaintiff to double jeopardy in violation of U.S. Constitutional Amends. V and XIV [and] Okla. Const. Art. II § 21 [and] 22 O.S. 1983 § 11 and 522.

Complaint, at 2.

In count I of the Complaint, Plaintiff alleges he was denied due process because "[t]o subject plaintiff to loss and damages without a hearing and without a conviction in 1985 is a denial of due process. As to the 1991 incident it derived solely from a confidential informant without supporting evidence [and] is also a denial of due process." Complaint, at 4.

In count II, Plaintiff alleges that "the policy used is retrospective and disadvantages the plaintiff" and "was not foreseeable." Id. In count III, Plaintiff alleges he has been "subjected to double jeopardy" in violation of the United States and Oklahoma constitutions and state law because he was "placed in maximum security in 1985 and 1991 over alleged incidents, and to place plaintiff back in maximum security twice for same offense is a violation of plaintiff's constitutional rights against double jeopardy." Id.

III. Statute of Limitations - Habeas Claims

A pre-eminent issue in this case is the appropriate statutory foundation for the action.

4

Plaintiff purports to bring the action under 42 U.S.C. § 1983, the federal civil rights statute. To the extent Plaintiff seeks a declaratory judgment and compensatory damages, § 1983 is an appropriate statutory basis for the action. However, Plaintiff also seeks to have "credited all pay lost and time credits. Re-evaluated security status under Smith v. Scott guidelines." To the extent Petitioner seeks the application of earned credits to shorten his physical confinement, this type of relief is available to Plaintiff only under 28 U.S.C. § 2241, because Plaintiff is challenging the execution of his sentence. See Dulworth v. Evans, 442 F.3d 1265, 1268 (10th Cir. 2006)(holding that 28 U.S.C. § 2241 governed state prisoner's habeas challenge to use of escape points to restrict his credit level because claim involved execution of the sentence).

With respect to Plaintiff's claim challenging the execution of his sentence, Plaintiff's action is construed as a habeas action brought pursuant to 28 U.S.C. § 2241. Plaintiff's 28 U.S.C. § 2241 habeas action is timely filed under 28 U.S.C. § 2244(d)(1)(D) if Plaintiff filed it within one year of the date the factual predicate of his claims could have been discovered through due diligence. Id. (holding § 2244(d)(1)'s one-year limitation period applies to all habeas petitions filed by state prisoners).

Plaintiff admits in the Complaint that he previously sought relief concerning the same facts in this Court in Case No. CIV-05-1216-T. Taking judicial notice of the Court's own records, in Barlor v. Ward, Case No. CIV-05-1216-T, filed October 18, 2005, Plaintiff alleged that he was denied due process and ex post facto guarantees because ODOC officials had reduced his earned credit level to level two "due to a 1985 escape" based on ODOC

5

policy OP-030103(M). Plaintiff alleged he had not had a disciplinary hearing or conviction to support the escape points and that "[a]pplication of a 2002 policy to any event before that date that deprives plaintiff of earned time credits would increase his punishment" in violation of the Ex Post Facto Clause of the United States Constitution. The action was dismissed after Plaintiff failed to timely pay the required initial partial filing fee.

Plaintiff also sought mandamus relief in the District Court of Oklahoma County in 2004 and alleged that ODOC officials had demoted his earned credit level in April 2003 in violation of his due process and ex post facto guarantees due to the use of his 1985 and 1991 escape history and a 1997 amendment of the ODOC's custody assessment policy. Motion to Dismiss (Doc. # 21), Ex. 1. The action was dismissed on the basis of Plaintiff's failure to exhaust administrative remedies. Id., Ex. 2.

Although in this action Plaintiff bases his claims on a 2003 version of the ODOC policy, it is clear that Plaintiff was aware at least in 2004 or 2005 that ODOC's use of escape points was being used to limit his ability to earn sentence credits. To the extent Plaintiff seeks the return of lost "earned credits" due to the use of escape points arising from his escape history he is asserting the same claim that he asserted in his 2004 action filed in Oklahoma County District Court and in his 2005 action filed in this Court.

Plaintiff consequently knew of the factual predicate of his habeas claims alleging due process and ex post facto violations at least in 2004 or 2005. Plaintiff has not shown due diligence in asserting those claims or extraordinary circumstances warranting the application of equitable tolling to extend the limitations period for the intervening 10 years until the

6

filing of this action. Plaintiff's 28 U.S.C. § 2241 habeas claims challenging the execution of his sentence (and seeking the return of earned credits) are therefore barred by operation of 28 U.S.C. § 2244(d)(1)(D).

IV. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Factual allegations, as opposed to conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

A *pro se* plaintiff's complaint must be broadly construed under this standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). See Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the

complaint as well as any documents attached to it as exhibits. Hall, 935 F.2d at 1112.

V. Exhaustion of Administrative Remedies

In Plaintiff's 42 U.S.C. § 1983 action, he seeks damages and declaratory relief based on alleged due process (count I) and ex post facto (count II) violations related to the use of his escape history as a basis for the administrative decision to transfer him to a maximum security facility.[1] Defendants move for dismissal or summary judgment as to these claims on the ground that Plaintiff has failed to exhaust available administrative remedies. Although Plaintiff alleges that he was transferred to a maximum security facility in March 2013, Plaintiff does not challenge the conditions of his confinement in that facility. Rather, Plaintiff's due process and ex post facto claims asserted in counts I and II of the Complaint relate entirely to the application of a 2003 ODOC policy concerning the use of an inmate's escape history.[2] Plaintiff alleges that this policy was used to increase his "security points" in violation of his due process rights and ex post facto guarantees.

The Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust his administrative remedies prior to filing a lawsuit in federal court challenging

---

[1]Plaintiff's allegation that his escape history was the sole basis for his transfer to a maximum security facility is not supported by the record. Plaintiff concedes in his responsive pleading that his escape history as well as a later-expunged misconduct for battery were used as bases for the UCC's recommendation in February 2013 that he be transferred to a maximum security facility.

[2]In Plaintiff's responsive pleading, he refers to "a misapplied 1997 amendment of OP-060213," but Plaintiff did not include any allegation concerning a 1997 amendment of ODOC policy in his Complaint, and he cannot amend the Complaint with allegations appearing for the first time in a responsive pleading.

8

prison conditions under 42 U.S.C. § 1983 or any other Federal law. 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006).

This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). To properly exhaust administrative remedies, Plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Having asserted the affirmative defense of failure to exhaust administrative remedies, Defendants bear the burden of proof. See Jones v. Bock, 549 U.S. 199, 215-216 (2007)(holding failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").

The procedure for exhausting administrative remedies for Oklahoma inmates, including inmates incarcerated in private prisons, is set forth in ODOC Policy OP-090124. Under this administrative process, the prisoner must first attempt to informally resolve the

matter with the appropriate staff member within three days of the incident. See Special Report, Ex. 16 (OP-090124). If that attempt is unsuccessful, the inmate must submit a Request to Staff ("RTS") addressed to the appropriate staff member within seven days of the incident. If the inmate is still not satisfied, the inmate may file a grievance with the reviewing authority within fifteen days of the incident or of the staff's response to his RTS, whichever is later.

If the inmate remains dissatisfied with the result, the inmate may appeal to the ODOC administrative review authority or, where appropriate, the chief medical officer within fifteen days of the reviewing authority's response. After this step, the administrative procedure would be completed. See Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority.").

In this case, Plaintiff submitted a grievance dated June 19, 2014. In his grievance, Plaintiff asked DCF Warden Wilkinson to "remove the escape points at issue in this matter given they were placed upon me pursuant to OP-060103(m) (2003); said OP did not exist in either 1985 or 1991 the date of my alleged 'escapes or attempts' [and] as such they are Ex Post Facto violations of my Constitutional rights specifically due process under the 14th Amendment and further violative of 10th Circuit precedent on this very issue, see Smith v.

Scott, 223 F.3d 1191 (10th Cir. 2000)."³ Special Report, Ex. 18. The grievance was returned unanswered with the remark that the grievance was not specific concerning dates. Id.

Plaintiff submitted another grievance dated July 11, 2014, in which Plaintiff requested the same action. Id., Ex. 19. This grievance was returned to Plaintiff unanswered with the remark that "[t]his happened in 2003. Out of time frame." Id. In correspondence dated August 19, 2014, ODOC's Administrative Review Authority returned Plaintiff's attempted appeal for the reason that his grievance was "out of time from date of incident until filing [of] request to staff." Id., Ex. 20. Plaintiff sent a letter to ODOC Director Patton dated December 4, 2014, asking for a transfer to a medium security facility. Id., Ex. 21. Director Patton responded that he does not intervene in facility assignment or transfer issues. Id.

The record shows that Plaintiff attempted to exhaust his administrative remedies, arguing that the use of escape points based on a 2003 ODOC policy denied him due process and ex post facto guarantees. However, Plaintiff was informed at the grievance and grievance appeal stages of the administrative remedial process that his grievance was out of time from the date of the incident because "[t]his happened in 2003." Thus, the grievance was not timely filed under the agency's procedural rules.

---

³In Smith v. Scott, 223 F.3d 1191 (10th Cir. 2000), the Tenth Circuit Court of Appeals held that an amendment to ODOC's policy OP-060213 adopted in 1997 could not be applied, consistent with ex post facto guarantees, as a basis for revoking earned credits previously applied to the sentence of an Oklahoma inmate. The court held that a 1997 amendment to the policy was a "substantive change" that was "not foreseeable in 1992 when Mr. Smith was charged with the escape misconduct" because the previous version of the policy did not employ the term "escape history points" and was not applied consistently within the ODOC.

11

Plaintiff's procedurally-defective grievance and grievance appeal are not sufficient to show that he completed ODOC's administrative grievance procedure. Therefore, Plaintiff has failed to exhaust the available administrative grievance procedure, and his 42 U.S.C. § 1983 claims in counts I and II of the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) on this basis.

VI. Double Jeopardy

Plaintiff alleges in count III of the Complaint that he is being subjected to double jeopardy in violation of federal and state constitutional and state law protections. As factual support, Plaintiff alleges he was "placed in maximum security in 1985 and 1991 over alleged [escape] incidents" and his recent transfer to a maximum security facility for the same escape history punishes him "twice for the same offense." Complaint, at 4.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, "consist[s] of three separate constitutional protections," including "protect[ion] against a second prosecution for the same offense after acquittal," "protect[ion] against a second prosecution for the same offense after conviction," and "protect[ion] against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969). "Jeopardy only attaches in a criminal proceeding, when the jury is impaneled and sworn, or in a bench trial when the court begins to hear evidence." United States v. Bizzell, 921 F.2d 263, 266 (10th Cir. 1990)(internal citations omitted).

Plaintiff's claim in count III is directed to the Clause's protection against "multiple punishments." Plaintiff's claim, however, is that ODOC officials violated his double

12

jeopardy rights in administrative decisions. Because Plaintiff was not punished in a criminal proceeding, he cannot state a claim of a violation of the Double Jeopardy Clause. See Fogle v. Pierson, 435 F.3d 1252, 1262 (10th Cir. 2006)("Because the Double Jeopardy clause only applies to proceedings that are essentially criminal in nature, it is well established that prison disciplinary sanctions - such as administrative segregation - do not implicate double jeopardy protections.")(internal quotations and citations omitted). Therefore, his claim in count III should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a plausible claim upon which relief may be granted.

VII. Eleventh Amendment Immunity

Plaintiff alleges that Defendant Patton and Defendant Ellis are liable to him under 42 U.S.C. § 1983 only because they are ODOC officials and that Defendant "Internal Affairs" is liable to him only because it is a state agency. Generously construing his Complaint, Plaintiff is alleging that Defendants Patton and Ellis are liable to him in their official capacities as state officials.

States, state officials named in their official capacities, and state agencies that are "arms of the State" are entitled to immunity under the Eleventh Amendment unless the State has waived its immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)(holding neither a State nor its officials acting in their official capacities are "persons" under § 1983); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)(holding "the principle of sovereign immunity is a constitutional limitation on the federal judicial power," but that a State's sovereign immunity may be waived by an

unequivocal expression of waiver).

Although in some circumstances Congress may abrogate a State's sovereign immunity by legislation, 42 U.S.C. § 1983 did not abrogate the sovereign immunity of a State. See Quern v. Jordan, 440 U.S. 332, 345 (1979)( § 1983 does not waive States' sovereign immunity). Additionally, Oklahoma has not consented to Plaintiff's suit against its state officials in their official capacities. See Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994)("Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court."). Thus, the Eleventh Amendment bars Plaintiff's § 1983 action seeking damages from Defendants Patton and Ellis in their official capacities and from Defendant "Internal Affairs."[4]

VIII. Challenge to Sufficiency of Evidence in Disciplinary Proceedings

In Plaintiff's Complaint brought under 42 U.S.C. § 1983, Plaintiff attempts to challenge the sufficiency of the evidence presented in the 1991 disciplinary proceeding and the finding that he was guilty of an attempted escape. In Heck v. Humphrey, 512 U.S. 477, 481 (1994), the Supreme Court affirmed that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."

---

[4]Although "a suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law, is not considered an action against the state within the meaning of the Eleventh Amendment," Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1234 (10th Cir. 2010), Plaintiff has not alleged an ongoing violation of federal law).

14

Because of this exclusive habeas remedy, the Court held that damages may not be recovered in a 42 U.S.C. § 1983 action "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 487. In the absence of such proof, a § 1983 action has not yet accrued, and the § 1983 action is dismissed without prejudice as "premature under Heck." Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 556 (10th Cir. 1999)

Plaintiff's 1991 misconduct conviction resulted in the loss of 365 days of earned sentence credits. Special Report (Doc. # 90), Ex. 9. Under these circumstances, Heck and Edwards v. Balisok, 520 U.S. 641, 646 (1997), bar any civil rights action seeking to challenge on due process grounds the 1991 misconduct conviction because such an action, if successful, would necessarily imply the invalidity of his underlying misconduct conviction resulting in the deprivation of good-time credits.

Additionally, to the extent Plaintiff attempts to challenge under 42 U.S.C. § 1983 the sufficiency of the evidence supporting the January 2013 finding in a disciplinary proceeding that Plaintiff was guilty of the misconduct of battery, Plaintiff has conceded, and evidence presented by Plaintiff shows, that this misconduct has been expunged from his record. Therefore, Plaintiff has not shown the deprivation of a liberty interest in connection with this disciplinary proceeding.

IX. Ex Post Facto Claim

To determine whether a law implicates the Ex Post Facto Clause, courts must determine whether a law is retrospective in that it applies to events occurring before its enactment, and whether it disadvantages a petitioner "by altering the definition of criminal conduct or increasing the punishment for [a] crime" after the crime has been committed. Smith, 223 F.3d at 1194.

The administrative decision made by Plaintiff's UCC to transfer Plaintiff to a maximum security facility in February 2013 is the sole basis for Plaintiff's ex post facto claim asserted in count II of the Complaint. The record shows that this administrative decision was based on (1) Plaintiff's "escape history" points due to his 1985 escape and also on security points related to (2) the seriousness of his conviction, (3) his earned credit level, and (4) his lengthy misconduct history which at that time included the battery misconduct that was subsequently overturned and expunged from his record. Special Report, Ex. 11.

Moreover, the recommendation of OSR Warden McCollum that Plaintiff be transferred to a maximum security facility was not based on his "escape history" points. Plaintiff has provided to the Court with his responsive pleading a copy of a memorandum dated January 29, 2013, in which Warden McCollum advised ODOC Classification and Population Administrator Miser that Plaintiff was "in need of maximum security placement as he poses a threat to the security of facility staff for the following reasons." Plaintiff's Response (Doc. # 29), Ex. 6. The memorandum outlines only Plaintiff's misconduct history as justification for the recommended transfer. Although this misconduct history included

16

reference to Plaintiff's 1991 misconduct for attempted escape, the memorandum does not specify that Plaintiff's "escape history" provided a reason for the recommendation of a transfer to a maximum security facility.

In light of the uncontroverted evidence presented by the parties, and reviewing the evidence in the light most favorable to Plaintiff, Plaintiff cannot demonstrate a material issue of fact for trial with respect to his Ex Post Facto claim because the uncontroverted facts reflect that his "escape history points" for his 1985 escape or his 1991 attempted escape misconduct were not the sole basis for the recommended transfer to a maximum security facility, and the "escape history" points did not increase his punishment. See Fed. R. Civ. P. 56(a)(summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted)("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."); Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted)(in considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party). Defendants are therefore entitled to summary judgment with respect to Plaintiff's Ex Post Facto claim in count II of the Complaint.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motions to

Dismiss (Docs. # 21, 27) be GRANTED and that Plaintiff's cause of action be DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds of failure to state a claim, failure to exhaust administrative remedies, and Eleventh Amendment immunity. It is further recommended that Defendants' Motions for Summary Judgment (Docs. # 21, 27) be GRANTED with respect to Plaintiff's claim in count II of the Complaint and that judgment issue in favor of Defendants and against the Plaintiff concerning this claim.

It is recommended that the dismissal of this cause of action count as one "prior occasion" or "strike" pursuant to 28 U.S.C. § 1915(g). See Hafed v. Fed. Bureau of Prisons, 635 F.3d 1172, 1176, 1177 (10th Cir. 2011)("When an action or appeal is dismissed as frivolous, malicious, or for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B), the dismissal counts as a strike" and "a dismissal under [28 U.S.C. ] § 1915A counts as a strike when the action was dismissed as frivolous, malicious, or for failure to state a claim . . . .").

Plaintiff is advised of the right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____August 11th_____, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not

specifically addressed herein is denied.

ENTERED this   22nd   day of   July   , 2015.

*[signature: Gary M. Purcell]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE