# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANNY BARLOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROBERT PATTON, Director, et al., )<br>)<br>Defendants. ) | Case No. CIV-15-66-D |

## **O R D E R**

Danny Barlor, a state prisoner appearing *pro se*, challenges the Magistrate Judge's Report and Recommendation dismissing his suit brought under 42 U.S.C. § 1983. Barlor alleges he was denied due process, and his constitutional rights against Ex Post Facto laws and double jeopardy were violated, because Defendants used "escape history" points to increase his custody classification to maximum security and thereby limited his ability to earn sentence credits or higher wages. Barlor seeks relief in the form of a declaratory judgment, compensatory damages, and injunction. The Court, having conducted a de novo review of the record,[1] finds Barlor's objections are overruled and the Report and Recommendation should be adopted.

---

[1] Pursuant to Fed. R. Civ. P. 72(b)(3), where the district court refers dispositive matters to a magistrate judge for a report and recommendation, the district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*.; *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1246 (10th Cir. 2015).

## BACKGROUND

Pursuant to authority granted under 57 OKLA. STAT. § 521(A),[2] the Oklahoma Department of Corrections ("ODOC") uses a "Custody Assessment Scale" to update, review, and reassess an offender's initial or previous custody assessment. According to the ODOC, the scale's primary function is to monitor an offender's adjustment and identify any problems that may arise. An offender's custody classification is evaluated according to a point system that considers, among other things, their most serious conviction, offense history, and escape history. Relevant to these proceedings, ten points are assessed if the offender either escaped or attempted to escape from a medium or maximum security prison, jail, juvenile institution, or detention center. The decision on where to place an offender is discretionary.

During Barlor's incarceration for manslaughter, a custody assessment was performed that resulted in him being transferred to a maximum security facility. Barlor was assessed six points for the severity of his conviction, and ten points for an escape from a medium-security prison in 1985. Barlor's custody assessment also noted that he and three other inmates were in involved in an altercation that resulted

---

[2]This provision states that "[w]henever a person is convicted of a felony and is sentenced to imprisonment that is not to be served in a county jail, the person shall be committed to the custody of the Department of Corrections and shall be classified and assigned to a correctional facility or program designated by the Department and authorized by law."

in one inmate being sent to the emergency room. Under the grading system, offenders who scored a twelve or higher on the aforementioned three categories were eligible for maximum security confinement – Barlor's score was sixteen.

The ODOC also implemented an "Offender Grievance Process" through which a prisoner in its custody may seek formal administrative decisions or answers to complaints. First, the offender must make an attempt to resolve the complaint by talking with the affected personnel within three days of the incident. If the matter is unresolved, the offender must then submit a "Request to Staff" within seven days of the subject incident. If the complaint remains unresolved, the next step allows an offender to submit his complaint on an "Offender Grievance Report Form," which must be completed within either fifteen days of the incident or the date of the response to the "Request to Staff," whichever occurred later. The Offender Grievance Form is received and answered by the warden. The warden's decision may be appealed to the Administrative Review Authority ("ARA"). The ARA's ruling is final and concludes the internal administrative remedies available to the offender within ODOC. If a grievance is denied by the facility head and ARA as untimely, an offender may make a request to submit a grievance out of time by filing a "Request to Submit a Misconduct/Grievance Appeal Out of Time" form.

Barlor submitted a Request to Staff, contending that the procedure evaluating

his escape history was implemented in 2003, well after his escape and attempted escape, and accordingly, constituted an Ex Post Facto violation of his right to due process under the Fourteenth Amendment. Barlor requested that the "escape points" be removed from his custody assessment and that he be assessed under procedures as they existed prior to 2003. His request was denied. Barlor submitted an Offender Grievance From to the warden which sought the same relief in his Request to Staff. After he was granted permission to submit an amended grievance, Barlor's request was denied on the grounds it was untimely. Barlor appealed the decision to the ARA, which denied it on the same basis. After his request to Defendant Robert Patton, then director of ODOC, was refused, Barlor did not seek permission to file an appeal out of time, but, at various times, filed suits in state and federal court challenging the assessment of said points. The suits were eventually dismissed on procedural grounds.

Barlor's present suit against Defendants Patton, Tracy Ellis and the Internal Affairs Investigation Unit of ODOC [3] before this Court frames the issue as follows:

> Plaintiff was placed in maximum security [on] 3-4-2013 based solely on the amount of security points he has and not because of any rule violation, and is being subjected to a 2003 policy that is not retroactive

---

[3] According to Barlor's Complaint, Tracy Ellis is a case manager at ODOC. The Internal Affairs Investigation Unit is responsible for conducting procedural and criminal investigations under the Director's authority.

but has given Plaintiff security points over alleged 1985 and 1991 incidents. Application of a 2003 policy to any event before that date that deprives Plaintiff of earned time credits [that] would increase his punishment is also a violation of the Ex Post Facto Clause of the U.S. [Constitution]. Plaintiff has no misconduct or felony conviction for a 1985 escape. In addition to this Plaintiff has already been subjected to maximum security in both instances (1985 and 1991) thereby subjecting Plaintiff to double jeopardy in violation of U.S. Constitutional Amend[ments]. V and XIV[;] Okla. Const. art. II § 21; [and] 22 O.S. 1981 § 11 and 522.

Compl., p. 2 [Doc. No. 1]. The matter was referred to Magistrate Judge Gary M. Purcell for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Defendants moved for dismissal of the Complaint or alternatively, sought summary judgment, on the grounds that (1) Barlor's claim was barred by the applicable statute of limitations; (2) the Complaint failed to state a claim upon which relief could be granted; (3) Plaintiff failed to exhaust administrative remedies; and (4) Defendants were entitled to qualified and sovereign immunity. Barlor timely filed his response.

On July 23, 2015, the Magistrate Judge issued his Supplemental Report and Recommendation ("R&R") [Doc. No. 32], recommending that Barlor's action be dismissed for failure to state a claim, failure to exhaust administrative remedies, and Eleventh Amendment immunity. The Magistrate Judge further recommended that Defendants' alternative request for summary judgment be granted as to Barlor's Ex Post Facto claim, as he failed to demonstrate a material issue for trial because the

undisputed facts reflected that his escape history points were not the sole basis for his transfer to maximum security, and said points did not increase his punishment. The Magistrate Judge recommended that dismissal of the action count as one "prior occasion" or "strike" pursuant to 28 U.S.C. § 1915(g).

Construed liberally, Barlor's objection only disputes that portion of the R&R dismissing his Complaint for failing to state a claim of Ex Post Facto and due process violations. *See* Resp. to Supp. R&R, p. 1 ("Plaintiff would also respectfully state that he vigorously objects to the Supplemental Report and Recommendation . . . on the following grounds . . . this Plaintiff has effectively proven that he has been subjected to Due Process and Ex Post Facto violations as a result of a misapplied 1997 policy by O.D.O.C. prison officials."). Thus, the Court's review is limited to the viability of such claims. *See* Fed. R. Civ. P. 72(b)(3) (district court must determine de novo any part of the magistrate judge's disposition to which a proper objection has been filed); *Stanley v. McMillian*, 594 F. App'x 478, 480 (10th Cir. 2014) (unpublished) ("even construing Plaintiff's objections liberally, only his arguments regarding his procedural due process claim were raised with sufficient specificity to preserve the issue for de novo review by the district court or for appellate review by this court. . . . .The district court accordingly did not err in limiting its review to the procedural due process claim.") (citing *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059

(10th Cir. 1996)).

## DISCUSSION

For purposes of the present order, the Court applies a summary judgment standard of review. Defendants' motions relied upon materials outside those referenced or entailed in the Complaint, including the court-ordered *Martinez* report, and recited the specific standard of review for motions for summary judgment under Rule 56. Barlor would not be prejudiced by such treatment, as he was put on notice Defendants were moving for summary judgment as alternative relief and indeed relied upon outside evidence himself in responding to the motions. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1213-14 (10th Cir. 2004) (district court relied on materials outside complaint in dismissing plaintiffs' civil rights claim, and appeal was therefore reviewed under summary judgment standard; plaintiffs were on notice of the possibility of converting the motion to dismiss to a motion for summary judgment, inasmuch as defendant filed its motion to dismiss in the alternative as one for summary judgment, and plaintiffs provided their extrinsic evidence to the court); *see also Cooks v. Whetsel*, No. CIV-11-1288-D, 2013 WL 1337206, at *2 (W.D. Okla. Feb. 22, 2013) (treating motion to dismiss as motion for summary judgment without giving notice of formal of conversion, as defendant relied upon *Martinez* report in arguing failure to exhaust administrative remedies).

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). A movant may establish that a fact cannot be genuinely disputed by citing to particular parts of depositions, documents, electronically stored information, affidavits, declarations, stipulations, discovery responses, or other materials. Fed. R. Civ. P. 56(c)(1)(A). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*. Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

## I. DUE PROCESS

To establish a violation of procedural due process rights based on his custody classification level, Barlor must establish that (1) he had a protected liberty interest in receiving a new or retaining a current custody classification and (2) defendants'

actions adversely affected that interest without the protections of due process guaranteed by the Fourteenth Amendment. *Lile v. Simmons*, 143 F. Supp. 2d 1267,1273 (D. Kan. 2001). The procedural due process clause applies only if a plaintiff is deprived of a liberty or property interest. *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995). Prison officials are granted broad discretionary authority over the institutions they manage. *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Inmate classification is a matter within the discretion of prison officials. *Davis v. Ward*, 92 F. App'x 634, 636 (10th Cir. 2004) (unpublished); *Douglas v. Hilligoss*, No. CIV-09-792-HE, 2010 WL 1329075, at *1 (W.D. Okla. Feb. 26, 2010).

The Constitution does not confer any right upon an inmate to any particular custody or security classification. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). The Constitution also does not confer upon inmates a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed . . . and is not otherwise violative of the Constitution." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (quoting *Montanye*, 427 U.S. at 242). Moreover, if the Constitution did confer upon an inmate the right to particular circumstances of custody, under *Sandin v. Conner*, 515 U.S. 472 (1995), he has no due process claim because his "transfer to less

amenable quarters for nonpunitive reasons [is] 'ordinarily contemplated by a prison sentence.'" *Id*. at 480 (quoting *Hewitt*, 459 U.S. at 468). A liberty interest in a custody classification therefore may arise only if state law or prison regulations create such a right. *Chambers v. Colorado Dept. of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (citing *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976)). Even if state law creates such a right, however, it does not create a liberty interest protected by the due process clause unless restraint of that right results in a hardship that is both "atypical" and "significant" when compared to ordinary prison life. *Sandin*, 515 U.S. at 484.

In the present case, Barlor's transfer to maximum security imprisonment does not "present the type of atypical, significant deprivation in which" there might conceivably be a liberty interest. *Id*. at 486. Therefore, his due process claim fails as a matter of law. *Lile*, 143 F. Supp. 2d at 1274; *Meyer v. Reno*, 911 F.Supp. 11, 17 (D.D.C. 1996) (observing that inmates do not have a protected liberty interest in remaining in their particular security classifications). Moreover, to find a liberty interest in the challenged classification would be to involve the judiciary in "the day-to-day functioning of . . . prisons . . . [and] . . . issues and discretionary decisions that are not the business of federal judges." *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to

preserve internal order and discipline and to maintain institutional security." *Lile*, 143 F. Supp. 2d at 1274 (quoting *Bell*, 441 U.S. at 547).

To the extent Barlor alleges a substantive due process violation, such is without merit as well. The "ultimate" standard for determining whether there has been a substantive due process violation is "whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002)). A plaintiff must do more than show that the government intentionally or recklessly caused injury by abusing or misusing government power. *Id.* (citing *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)). As indicated above, the conduct complained of herein does not shock the conscience of this Court so as to constitute a due process violation. The recommendation that Barlor be transferred to a maximum security facility was based on several factors, including his involvement in a prior altercation with three other offenders, resulting in one being sent to the emergency room. The change in Barlor's security classification is not conscience-shocking.

## II. DOUBLE JEOPARDY

An alleged violation of the Double Jeopardy Clause is a question of law. *Earnest v. Dorsey*, 87 F.3d 1123, 1128 (10th Cir. 1996). The Supreme Court has

consistently held that "the Double Jeopardy Clause provides three related protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *United States v. Wilson*, 420 U.S. 332, 343 (1975) (internal citation omitted). Stated further:

> The Double Jeopardy Clause provides that no person [shall] be subject for the same offence to be twice put in jeopardy of life or limb. We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment. . . . The Clause protects only against the imposition of multiple criminal punishments for the same offense . . . and then only when such occurs in successive [criminal] proceedings[.]

*Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (citations and internal quotation marks omitted). The Double Jeopardy Clause does not apply to proceedings that are not "essentially criminal." *Breed v. Jones*, 421 U.S. 519, 528 (1975).

Prison classification proceedings are not part of a criminal prosecution. Consequently, Barlor's assignment to maximum security is not "punishment" for double jeopardy purposes. *See Nutter v. Ward*, 173 F. App'x 698, 702 (10th Cir. 2006) (unpublished) (prison's use of dismissed escape charge to classify prisoner for purposes of custody was neither punishment nor part of a criminal prosecution); *Welch v. Epps*, 103 F. App'x 828, 829 (5th Cir. 2004) (unpublished) (mere change in custodial status does not qualify as a second "punishment" for double jeopardy

-12-

purposes). Consequently, Barlor's double jeopardy claim fails as a matter of law.

## III. EX POST FACTO

Lastly, Barlor contends that utilization of the aforementioned criteria for maximum security transfer, a criteria allegedly promulgated after his conviction, violates the Ex Post Facto Clause of the Constitution as it constitutes additional punishment for his offenses. The Ex Post Facto Clause bars any law which: (1) punishes an act that was innocent at the time the act was committed; or (2) retroactively increases punishment for a crime after its commission. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). "[T]he Clause is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *California Dept. of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (internal quotation marks and citations omitted). "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's '*opportunity* to take advantage of provisions for early release [or favorable prison programs],' but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Id*. at 506 n. 3 (citation omitted, emphasis in original). A law that does not increase the punishment imposed upon an inmate for a criminal offense previously committed cannot violate the Ex Post Facto Clause even when applied

retrospectively. *Morales*, 514 U.S. at 507-09.

ODOC's utilization of the Custody Assessment Scale does not violate the Ex Post Facto Clause because it did not increase Barlor's punishment beyond his original sentences. *See Dyke v. Meachum*, 785 F.2d 267, 268 (10th Cir.1986) (Ex Post Facto Clause not implicated by Department of Correction's promulgation of new classification system with respect to eligibility for minimum custody because "the Ex Post Facto Clause does not bar a prison from changing the regulations governing their internal classification of prisoners."). Barlor contends his case is similar to *Smith v. Scott*, 223 F.3d 1191 (10th Cir. 2000), in which the court of appeals found an ex post facto violation in the retroactive application of a substantive change in ODOC regulations to the disadvantage of an incarcerated inmate. *Smith* is factually distinguishable, however, because it involved a retrospective change in regulations regarding earned time credits that had the effect of lengthening the prisoner's period of incarceration for his offense. Barlor has submitted no facts or evidence to indicate that the sentences imposed following his convictions have been increased due to his classification for maximum security confinement. Therefore, his allegations are insufficient to set forth a claim cognizable under the Ex Post Facto Clause.

**CONCLUSION**

The Court has conducted the de novo review required by 28 U.S.C. § 636(b)

of "those portions of the report or specified findings or recommendations to which objection is made." Upon review, the recommendation of the Magistrate Judge will be followed.

**IT IS THEREFORE ORDERED** that the Report and Recommendation of the United States Magistrate Judge is hereby **ADOPTED**. Plaintiff's Complaint is hereby **DISMISSED** as set forth herein. A judgment shall be issued accordingly.

**IT IS SO ORDERED** this 31st day of March, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE